**AMERICAN HOME ASSURANCE CO., Plaintiff,**

v.

**LIBBEY–OWENS–FORD COMPANY, Defendant.**

**Civ. A. No. 81–1635–S.**

United States District Court, D. Massachusetts.

May 10, 1984.

Erik Lund, Posternak, Blankstein & Lund, Boston, Mass., for plaintiff.

Sibley Reppert, Herrick & Smith, Boston, Mass., for defendant.

**MEMORANDUM AND ORDER ON CHOICE OF LAW ISSUES**

SKINNER, District Judge.

At a pretrial conference on March 6, 1984, I asked the parties to brief the choice of law governing this case. The plaintiff, American Home Assurance Co. ("American Home"), is an insurance company incorporated in New York with its principal place of business there. The defendant, Libbey-Owens-Ford Company ("LOF") is an Ohio corporation with its principal place of business in Ohio. American Home claims that the insurance policy it issued to LOF does not cover the loss incurred by LOF from its participation in the settlement of the John Hancock litigation. LOF claims that the policy does cover its loss, that American

Home has breached its contract with LOF and that American Home's denial of coverage was made in bad faith. LOF contends that Ohio law governs. American Home contends that either New York or Massachusetts law governs.

█ Because the jurisdictional basis of this suit is diversity of citizenship, I must apply Massachusetts choice of law rules. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Sampson v. Channell*, 110 F.2d 754 (1st Cir.1940). Although Massachusetts in the past has applied a *lex loci* approach to choice of law in contract cases, the Supreme Judicial Court has recently indicated its preference for a functional approach similar to that in the *Restatement 2d of Conflict of Laws* (1971).

> Traditionally this court has held, as a general rule, that material issues arising in actions to enforce contracts are to be answered according to the law of the place where the contract was made.... It has been recognized that reference to the law of the place of making can produce awkward or arbitrary results where that place had no or little other connection with the contract or the parties ... and almost all States have replaced place-of-making or other one-factor tests with a more functional approach.... The facts of the present case deprive us of an opportunity to elect among the extant doctrines, ...

*Choate, Hall & Stewart v. SCA Services, Inc.*, 378 Mass. 535, 392 N.E.2d 1045, 1048–1049 (1979) (citations omitted). Two judges of this court have read this opinion as a rejection of the *lex loci* approach and an expression of preference for a functional approach to contract choice of law. *Computer Systems Engineering, Inc. v. Qantel Corp.*, 571 F.Supp. 1365, 1368 (D.Mass. 1983) (Keeton, J.); *Shulhof v. Northeast Cellulose, Inc.*, 545 F.Supp. 1200, 1209 (D.Mass.1982) (Garrity, J.); *McKinney v. National Dairy Council*, 491 F.Supp. 1108, 1112 (D.Mass.1980) (Keeton, J.). In all of these cases, the district judges took

guidance from the *Restatement 2d of Conflict of Laws.*

The *Restatement 2d* provides that if the contract specifies a choice of law, that choice will normally govern. § 187. Where there is no contractual provision governing,

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6....

Section 6 of the *Restatement 2d* provides that in general,

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> > (a) the needs of the interstate and international systems,
> > (b) the relevant policies of the forum,
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> > (d) the protection of justified expectations,
> > (e) the basic policies underlying the particular field of law,
> > (f) certainty, predictability and uniformity of result, and
> > (g) ease in the determination and application of the law to be applied.

█ The two principal policies underlying insurance law are: (1) prevention of sharp dealing by insurance companies, and (2) protection of expectations of the parties. *Cf. Restatement 2d*, §§ 192, 193. Ohio has the strongest interest in the first underlying policy because the insured is an Ohio corporation. The second underlying policy could be served by the application of either New York law or of Ohio law. It would not be served by application of Massachusetts law. The parties would not know what to expect, if every time a dispute

arose over an LOF product which had been shipped into a different state, the parties had to relitigate the basic terms of their relationship. This would be enormously inefficient. In many cases, it would be difficult to determine a single state in which the claim arose. Massachusetts has no interest in the present dispute which is between citizens of other states, although it did have an interest in seeing the underlying John Hancock dispute resolved. The interests of other states in which the parties do business in having disputes resolved promptly will be best served if the parties have a clear framework within which to resolve their disputes.

Accordingly, I conclude that a Massachusetts court would find that Ohio has the most significant relationship to the present case, and rule that Ohio law will govern this case. Briefs on the issue of bad faith will be filed by June 1, 1984.